25 F.3d 1051
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
John Bernard RALEY, Defendant-Appellant.
 No. 93-5632.
 United States Court of Appeals, Sixth Circuit.
 May 20, 1994.
 
 Before: NELSON, SUHRHEINRICH, and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant appellant, John Bernard Raley, appeals his convictions for manufacturing marijuana, in violation of 21 U.S.C. Sec. 841(a)(1); possessing with intent to distribute marijuana, in violation of 21 U.S.C. Sec. 841(a)(1); and, using a firearm during and in relation to a drug transaction, in violation of 18 U.S.C. 924(c). For the reasons that follow, we affirm both the convictions and the sentence.
 
 I.
 
 2
 On October 7, 1991, the Kentucky State Police received information that marijuana was growing in a field located on property in Washington County, Kentucky. Deciding to investigate this tip, officers arrived on the property between 9:00 a.m. and 12:00 p.m.. Upon arriving at the field, the police easily located a plot of marijuana and noticed that some of the plants had already been harvested. The officers decided to watch the property in case the owner or owners of the patch returned. The first two nights of the surveillance were uneventful, but in the early morning hours of October 9 they observed a truck drive up and let someone out. As the sun came up the police were able to see a person cutting and bagging marijuana in a previously undiscovered patch.[1] The police allowed this individual to leave the marijuana patch without approaching him.
 
 
 3
 Later in the afternoon of October 9, police observed two individuals cutting and bagging the marijuana plants in the field. The officers watched the two individuals walk from one marijuana patch to the next as they harvested the marijuana. The two men were also bagging marijuana that had already been cut.
 
 
 4
 The police then made the decision to arrest the men. Detective David Roberts approached the men and yelled, "State Police!" Both men began running, and one of them escaped. The man later identified as appellant Raley, however, stepped into a groundhog hole and fell. While Raley was lying on the ground, Detective Davis noticed him attempting to do something with his hand in the grass to his left. Davis later returned to the spot where Raley had fallen and recovered a fully loaded 9 millimeter semi-automatic pistol. The officers seized 1,294 marijuana plants from the patches and seven feed sacks that were already full.
 
 
 5
 At trial, Raley testified on his own behalf. He testified that two days before he was arrested, he had been fishing on the property. While there, he claimed he was approached by an individual, whom he did not know, who spoke to him for a short time and then offered to share a joint with him. After sharing the joint, the individual told Raley there was a patch of marijuana growing on the farm, and suggested that the two meet again to pick some for their own use.
 
 
 6
 Raley stated that he went to the marijuana patch for the first time around 2:30-3:00 on October 9. According to Raley, he noticed that someone had already been there harvesting the marijuana. At that time, Raley and the other man, whom Raley again claimed never to have seen before their meeting while fishing, began filling bags with marijuana. The police approached Raley while he was filling the sack with marijuana. Raley admitted running from the police and attempting to hide his firearm, which he said he carried to shoot small animals such as snakes and groundhogs, and for target practice. Raley said that he hid the gun because he was afraid that if the police saw it, they would shoot at him. Raley also claimed that the marijuana he was harvesting was for his own use.
 
 
 7
 The jury convicted Raley on all three counts, and the district court sentenced him to 151 months imprisonment on Counts 1 and 2, and to 60 months on Count 3. The court, however, reduced Raley's sentence to 120 months, the mandatory minimum, on Counts 1 and 2, before issuing its judgment and commitment order, leaving Raley with a 180 month term of imprisonment.
 
 
 8
 On appeal, Raley raises five assignments of error. First, Raley claims that the prosecution improperly vouched for government witnesses during closing argument. Second, he claims that there was insufficient evidence to support his conviction for the 924(c) weapons charge. Third, he claims that there was also insufficient evidence to support his conviction for intent to distribute. Fourth, he asserts that the district court erred in its calculation of the amount of drugs involved in the case. Finally, Raley contends that the district court erred in enhancing his sentence for obstruction of justice.
 
 II.
 A. Prosecutorial Misconduct
 
 9
 Raley asserts that the prosecution violated his right to a fair trial by improperly vouching for government witnesses, and by commenting on the credibility of the defense during closing arguments. Raley specifically contends that three comments made during the government's closing argument constitute improper vouching: "These officers had every opportunity to embellish their testimony but they didn't, they told it to you straight," and, "[b]ut these officers if they were in some sort of conspiracy to convict at all costs their testimony would not have contained the inconsistencies or any difficult situations, they could have eliminated those, but they didn't, because they came to you and testified truthfully," and, "[t]he officers were here, they testified consistently with what they had said before and they told you the truth." Because Raley's counsel made no objection at trial, we will review only for plain error his claims that these statements were impermissible vouching. United States v. Morrow, 977 F.2d 222, 229 (6th Cir.1992), cert. denied, 113 S.Ct. 2969 (1993); Fed.R.Crim.P. 52(b).
 
 
 10
 It is settled that "[a] government attorney has a duty not to express a personal opinion or belief regarding the truth or falsity of any testimony or evidence." United States v. Hurst, 951 F.2d 1490, 1502 (6th Cir.1991), cert. denied 112 S.Ct. 1952 (1992); see also United States v. Young, 470 U.S. 1, 8 (1985); and, it has been held that improper "vouching" occurs when "counsel, in argument, refers to evidence not in the record." United States v. Martinez, 981 F.2d 867, 871 (6th Cir.1992), cert. denied, 113 S.Ct. 1874 (1993).
 
 
 11
 However, in order to warrant the reversal of a conviction, the misconduct complained of, " 'must be so pronounced and persistent that it permeates the entire atmosphere of the trial,' " United States v. Krebs, 788 F.2d 1166, 1177 (6th Cir.), cert. denied, 479 U.S. 930 (1986) (quoting United States v. Lichenstein, 610 F.2d 1272, 1281 (5th Cir.1980)); or, "we must conclude that the impropriety was so 'gross as probably to prejudice the defendant.' " Martinez, 981 F.2d at 871 (quoting United States v. Ashworth, 836 F.2d F.2d 260, 267 (6th Cir.1988)).
 
 
 12
 Under the facts of this case, we cannot conclude that the alleged misconduct tainted the entire trial, or that it was so gross that Raley was prejudiced. At no time did the prosecutor make a statement such as "I believe," or "it is my personal opinion" that the witnesses were telling the truth. Further, at no time during his closing argument did the prosecutor make reference to evidence outside of the record in order to bolster the credibility of his witnesses. While we reaffirm the principle that a United States Attorney must be ever vigilant in his efforts to maintain a high degree of professionalism, we find that none of the challenged statements could have so prejudiced Raley's trial as to render his trial unfair and unreliable. Hurst, 951 F.2d at 1503.
 
 
 13
 Raley also complains that the prosecutor made statements which constitute improper comments on his own veracity: "Raley's defense is admit what you have and deny everything else hoping you can push it over on them;" and, "[b]ut the bottom line about Mr. Raley, his truthfulness is that it's not." We find that these statements, if misconduct at all, did not so prejudice Mr. Raley as to render his trial unfair.
 
 
 14
 This is not a case in which the "prosecuting attorney seriously exceeded the bounds of permissible argument by repeatedly calling the [defendant] a liar instead of just reviewing the evidence which detailed the inconsistencies in his statements ..." Webster v. Rees, 729 F.2d 1078, 1080 (6th Cir.1984). The statements in question were isolated rather than extensive, and we conclude that, "when viewed in context of the full closing argument, the prosecutor's statements ..." were not an attempt to mislead or prejudice the jury. United States v. Driscoll, 970 F.2d 1472, 1485 (6th Cir.1992), cert. denied, 113 S.Ct. 1056 (1993).
 
 B. Sufficiency Of The Evidence
 1. The 924(c) Charge
 
 15
 Raley's next assignment of error is that there was insufficient evidence to support his conviction for carrying and using a firearm during the commission of a drug offense. 18 U.S.C. Sec. 924(c).[2] An appellate court, when reviewing the sufficiency of the evidence to support a conviction, must view all of the evidence in the light most favorable to the government, giving full weight to all reasonable inferences to be drawn from the evidence. Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Gibson, 675 F.2d 825, 829 (6th Cir.) cert. denied, 459 U.S. 972 (1982). The reviewing court can only reverse, if after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Ellzey, 874 F.2d 324, 328 (6th Cir.1989).
 
 
 16
 Sufficient evidence exists for a conviction under Sec. 924(c) if a weapon was intentionally " 'available for possible use during or immediately following the transaction, or if it facilitated the transaction by lending courage to the possessor.' " United States v. White, 985 F.2d 271, 273 (6th Cir.1993) (quoting United States v. Brown, 915 F.2d 219, 226 (6th Cir.1990)). In United States v. Clark, 928 F.2d 733 (6th Cir.), cert. denied, 112 S.Ct. 144 and 112 S.Ct. 240 (1991), this Court upheld a Sec. 924(c)(1) conviction where police officers discovered a gun near a quantity of cocaine on a mattress, since it was reasonable to believe the firearm was "located so as to be quickly and easily available during" the drug transaction. Id. at 737.
 
 
 17
 Applying the standards laid out above, we uphold Raley's Sec. 924(c) conviction. At trial, Detective Davis, the arresting officer, testified that after Raley tripped and fell to the ground, he began to run his hands through the grass. After arresting Raley, officer Davis "walked back over to the grass to see what he was doing," and found the gun in the same location Raley had fallen. Furthermore, Raley admitted at trial that he had the gun on his person the entire time he was harvesting the marijuana. Although Raley denied intending to use the pistol in furtherance of a drug crime, whether the jury chose to believe Raley's version of events is a question of credibility, which is within the sole province of the jury. United States v. Schultz, 855 F.2d 1217, 1221 (6th Cir.1988). Because there was sufficient evidence to convict Raley of carrying a firearm during and in relation to a drug trafficking crime, we affirm Raley's Sec. 924(c) conviction.
 
 2. Intent To Distribute
 
 18
 Raley also argues that there was insufficient evidence to support his conviction for intent to distribute the marijuana in the field.[3] Raley attempts to cast his situation in the mold of United States v. White, 932 F.2d 588 (6th Cir.1991), in which this Court reversed the defendant's conviction under Sec. 841(a)(1) because there was insufficient evidence to support the jury's verdict. In White, the defendant lived in a house trailer three feet from a marijuana patch. This Court found that, "the only evidence linking White to the marijuana was the fact that he lived three feet from the patch." Id. at 589.
 
 
 19
 In the case before us today, Raley was twice seen in the marijuana patch harvesting the plants and bagging them. This Court has held that, ' "[i]ntent to distribute a controlled substance has been inferred solely from possession of a large quantity of the substance.' " White, 932 F.2d at 590 (quoting United States v. Franklin, 728 F.2d 994, 998 (8th Cir.1984)); see also United States v. Dotson, 871 F.2d 1318, 1323 (6th Cir.1989) (upholding conviction where twenty-five pounds of marijuana worth approximately $28,000 were attributed to defendant), cert. denied, 498 U.S. 831 (1990). Where, as here, such a massive quantity of marijuana, over a thousand kilograms, is attributable to the defendant, we hold that there is sufficient evidence from which the jury could reasonably have inferred that Raley intended to distribute the marijuana.
 
 C. Calculation of The Amount of Drugs
 
 20
 Raley next contends that at sentencing the district court erred in calculating the amount of drugs involved in the offense, and then exacerbated the error by attributing that amount to Raley. We will not disturb the lower court's ruling unless we find that the lower court was clearly erroneous. United States v. Medina, 992 F.2d 573, 590 (6th Cir.1993), cert. denied, 114 S.Ct. 1049 (1994). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." United States v. Allen, 954 F.2d 1160, 1168 (6th Cir.1992). In addition, the court's findings need only be supported by a preponderance of the evidence. Id.
 
 
 21
 The district court accepted the trial testimony of Detective Dennis Benningfield, who supervised the counting of the marijuana plants present in the field, as proof of the amount of drugs found in the field. Specifically, the district court found that "based on the testimony of Dennis Benningfield, Kentucky State Police officer, that there were in the marijuana patch 1294 plants in all locations.... Based upon that testimony I believe the record sustains a finding by at least a preponderance of the evidence that that quantity results in 1000 kilos...."
 
 
 22
 Regarding the quantity of marijuana involved, Benningfield testified as follows:
 
 
 23
 Q: Now, at the scene, you were the one in charge of gathering the evidence together, I believe you testified?
 
 
 24
 A: Yes, sir.
 
 
 25
 Q: Did you make a count of the number of plants were in the field that was taken that day?
 
 
 26
 A: I kept a total count. As each officer cut he was responsible for cutting [sic] ever how many he cut.
 
 
 27
 Q: And you were the one responsible for gathering them up?
 
 
 28
 A: That's correct.
 
 
 29
 Q: The officers would bring them to you and what would you do?
 
 
 30
 A: I [sic] take their count and then we just loaded it into the truck.
 
 
 31
 Q: You then determine how much was actually loaded, how many plants in total?
 
 
 32
 A: There was a total of 1294 plants, I think that's right.
 
 
 33
 Raley's counsel never challenged Benningfield's testimony on that issue.
 
 
 34
 The district court's calculation of drug quantities for sentencing purposes must be "supported by facts that have some 'minimum indicium of reliability beyond mere allegation.' " United States v. Chalkias, 971 F.2d 1206, 1215 (6th Cir.), cert. denied, 113 S.Ct. 351 (1992) (quoting United States v. Smith, 887 F.2d 104, 108 (6th Cir.1989)). This Court has held that even "[i]f the exact amount [of drugs] cannot be determined, an estimate will suffice, but here also a preponderance of the evidence must support the estimate." United States v. Walton, 908 F.2d 1289, 1302 (6th Cir.), cert. denied, 111 S.Ct. 273 and 111 S.Ct. 530 and 111 S.Ct. 532 (1990).
 
 
 35
 We hold that Benningfield's testimony constituted a quantum of proof which provided at least a "minimum indicium" of reliability, and that it was sufficient to meet the preponderance of the evidence standard required to support determinations of quantity.
 
 
 36
 Raley also argues that the district court had no basis on which to conclude he should be held accountable for the entire amount of marijuana found in the fields. Instead, Raley argues that the only amount of marijuana properly attributable to him was the amount that he had in the sack at the time of his arrest.
 
 
 37
 At trial, however, Sheriff Barr, one of the officers involved in the surveillance, testified that in addition to being in the field at the time he was arrested, Raley was the individual whom the officers had observed harvesting marijuana in the early morning of October 9, 1991. In addition, the officers observed Raley moving from field to field, harvesting marijuana from different locations. Based on this testimony, the district court reasonably found that Raley was not, as he testified, in the field only a short time in order to steal some marijuana for his own use. Rather, it was reasonable for the court to conclude that Raley had been in the field on at least two separate occasions and had harvested marijuana out of at least two separate patches. Accordingly, it was reasonable for the court to attribute to Raley all of the marijuana seized.
 
 D. Obstruction Of Justice Enhancement
 
 38
 Raley next contends that he should not have received a two-point enhancement for obstruction of justice because the district court failed to make the requisite findings for this enhancement. The district court's determination that the enhancement was appropriate is reviewed for abuse of discretion. United States v. Bennett, 975 F.2d 305, 308 (6th Cir.1992).
 
 
 39
 The sentencing guidelines provide that: "If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." U.S.S.G. Sec. 3C1.1.
 
 
 40
 The Supreme Court has recently provided guidance as to what findings a district court must make before imposing an obstruction enhancement. In United States v. Dunnigan, 113 S.Ct. 1111 (1993), the alleged obstruction of justice involved perjury by a testifying defendant as is the case here. The principal issue before the Court was the constitutionality of an enhancement based on trial perjury. The Fourth Circuit had found such an enhancement to be unconstitutional. The Supreme Court reversed and held that perjury committed by a testifying defendant would clearly constitute an obstruction of justice. Id. at 1114-15.
 
 
 41
 In an effort to allay the fears of the Fourth Circuit that every guilty verdict in a case in which the defendant had testified would result in an obstruction of justice enhancement, the Court laid down some guidelines for district judges:
 
 
 42
 Of course, not every accused who testifies at trial and is convicted will incur an enhanced sentence under Sec. 3C1.1 for committing perjury. As we have just observed, an accused may give inaccurate testimony due to confusion, mistake or faulty memory. In other instances, an accused may testify to matters such as lack of capacity, insanity, duress or self-defense. Her testimony may be truthful, but the jury may nonetheless find the testimony insufficient to excuse criminal liability or prove lack of intent. For these reasons, if a defendant objects to a sentence enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same.... (citations omitted). When doing so, it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding. The district court's determination that enhancement is required is sufficient, however, if, as was the case here, the court makes a finding of an obstruction or impediment of justice that encompasses all of the factual predicates for a finding of perjury.
 
 
 43
 Dunnigan, 113 S.Ct. at 1117.
 
 
 44
 This Court recently addressed the Dunnigan decision in Mathews v. United States, 11 F.3d 583 (6th Cir.1993). There, the trial court applied an obstruction enhancement after stating: "[T]he Court will abide by the jury's verdict in the decision as to whether the statement of the Defendant as to the nature of the transaction was true or not...." Id. at 587. This Court vacated the defendant's sentence "not because of the paucity of the judge's findings, but because the record reflects he deferred to the jury rather than making a finding on his own." Id. In the case at bar, the trial judge stated in part:
 
 
 45
 I am adding two points because I think you obstructed justice in taking the witness stand and testifying as you did. For reasons previously stated on the record I find that the testimony you gave was materially false and was designed to shape the outcome of the case and impeded to do [sic] administration of justice.
 
 
 46
 This is clearly an independent determination on the part of the trial judge that the defendant committed perjury, and that the obstruction enhancement was therefore justified. This finding comports with the standards laid out by the Supreme Court in Dunnigan, and interpreted by this Court in Matthews. As a result, it was proper for the district court to impose the two level obstruction enhancement.
 
 III.
 
 47
 For the foregoing reasons John Bernard Raley's convictions and sentence are AFFIRMED.
 
 
 
 [1]
 Because of their distance from the field, approximately fifty yards or so, several of the officers were unable to get a good enough view to positively identify who was cutting the marijuana. However, Donnie Barr, the Sheriff of Washington County, who was assisting in the surveillance, testified that the person cutting the marijuana in the morning hours of October 9, was the defendant, John Raley
 
 
 [2]
 18 U.S.C. Sec. 924(c)(1) provides in pertinent part:
 Whoever, during and in relation to any crime of violence or drug trafficking crime, ... uses or carries a firearm, shall in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years....
 
 
 [3]
 The government argues alternative bases for finding sufficient evidence to support Raley's 21 U.S.C. Sec. 841(a)(1) conviction--first, that Raley admitted in his testimony that he might have shared some of the marijuana with his friends, see United States v. Branch, 483 F.2d 955, 956 (9th Cir.1973), and second, that intent to distribute can be inferred from the quantity of marijuana. Because we find that the second basis is sufficient to support Raley's conviction, we do not address the first